## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**AGT CAPITAL, LLC,** *Directly*          **PLAINTIFF**

**v.**        CAUSE NO. 3:14cv17 TSL-JMR

**M STREET INVESTMENTS, INC.,**
**GREAT SOUTHERN INVESTMENTS**
**GROUP, INC., NIT MANAGEMENT, INC.,**
**JEFFREY W. PARLIN, DONALD A. BAILEY,**
**BRETT MAVERICK VENTURE FUND, LP,**
**SANDRA L. BAILEY, NIKI WEISS, and**
**RONALD K. LEWIS**          **DEFENDANTS**

**and**

**AVONDALE SHIPYARDS, INC.,**
**and ALEXANDRA TRUST,** *Derivatively*
*on behalf of* **M STREET INVESTMENTS,**
**INC., GREAT SOUTHERN INVESTMENT**
**GROUP, INC., and NIT MANAGEMENT, INC.**      **PLAINTIFFS**

**v.**

**JEFFREY W. PARLIN, DONALD A. BAILEY,**
**BRETT MAVERICK VENTURE FUND, LP,**
**SANDRA L. BAILEY, NIKI WEISS,**
**and RONALD K. LEWIS**          **DEFENDANTS**

### COMPLAINT
### (PLAINTIFF DEMANDS TRIAL BY JURY)

Plaintiff AGT Capital, LLC, files this Complaint directly against Defendants M Street

Investments, Inc., Great Southern Investments Group, Inc., NIT Management, Inc., Jeffrey

W. Parlin, Donald A. Bailey, Brett Maverick Venture Fund, LP, Sandra L. Bailey, Niki

Weiss and Ronald K. Lewis; and derivatively brings this lawsuit on behalf of M Street

Investments, Inc., Great Southern Investment Group, Inc. and NIT Management, Inc. against

Jeffrey W. Parlin, Donald A. Bailey, Brett Maverick Venture Fund, LP, Sandra L. Bailey, Niki Weiss and Ronald K. Lewis; and for cause of action states as follows:

## Parties, Jurisdiction & Venue

1.      Plaintiff AGT Capital, LLC, is a limited liability company organized and existing under the laws of the State of Texas.  Plaintiff[1] is the recipient of an assignment of assets and claims from Avondale Shipyards, Inc. ("Avondale"), a corporation organized and existing under the laws of the State of Louisiana, and Alexandra Trust, a trust organized and existing under the laws of the State of Texas.  As such AGT is the assignee and successor in interest to Avondale.  AGT is also the assignee of Avondale's claims relating to the facts of this case.  In addition, Alexandra Trust, a trust created and existing under the laws of the State of Texas, is the sole shareholder in Avondale.  Alexandra Trust also wholly owns and is the sole shareholder in Defendant NIT Management, Inc.  AGT is the assignee and successor in interest to Alexandra's interests in Avondale and NIT.  AGT is also the assignee of Alexandra's claims relating to the facts of this case.

2.      Defendant M Street is a corporation organized and existing under the laws of the State of Mississippi, with its principal place of business located at 6023 Avenue S, Suite 242, Galveston, Texas 77551.  M Street may be served with process by serving its registered agent for service of process, John Moore, at 301 Highland Park Cove, Suite B, Ridgeland, Mississippi 39157.

---

[1]The named Plaintiff in this matter is AGT Capital, LLC, in its capacity as the assignee, owner and successor in interest to all assets and claims of Avondale Shipyards, Inc., and all assets and claims of Alexandra Trust in the corporations and subject matter of this suit.  However, for the sake of the clarity and fluidity of the Complaint, the term "Plaintiffs" will be used regularly throughout the Complaint to refer jointly to Alexandra and Avondale.

3. Defendant Great Southern is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business located at 1310 Mulberry Street, Vicksburg, Mississippi 39180. Great Southern may be served with process by serving its registered agent for service of process, John Moore, at 301 Highland Park Cove, Suite B, Ridgeland, Mississippi 39157.

4. Defendant NIT Management, Inc. ("NIT") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business located at 1828 Dew Valley Drive, Carrollton, Texas 75010. NIT may be served with process by serving its registered agent for service of process, INCYOURBIZ Corp., at 3540 West Sahara # E6-135, Law Vegas, Nevada 89102-5816.

5. Jeffrey W. Parlin ("Parlin") is an adult resident citizen of the State of Texas, who may be served with process at 1828 Dew Valley Drive, Carrollton, Texas 75010. Upon information and belief, Parlin has been previously convicted of a felony in violation of 18 U.S.C. § 513. Plaintiff maintains that such conduct is consistent with the tortious conduct described in this Complaint.

6. Donald A. Bailey ("Bailey") is an adult resident citizen of the State of Texas, who may be served with process at 4131 Pointe West Drive, Unit 301, Galveston, Texas 77554. Upon information and belief, Bailey as a former member of the Philadelphia brokerage firm, Bailey, Martin & Appel, Inc.,was formally suspended by the NASD (National Association of Securities Dealers) for securities violations. Plaintiff maintains that such conduct is consistent with the tortious conduct described in this Complaint.

7. Defendant Brett Maverick Venture Fund, LP ("Maverick") is a Texas limited

partnership organized and existing under the laws of the State of Texas. Maverick may be served with process by serving its agent for service of process, Don Bailey, whose address is 4131 Pointe West Drive, Unite 301, Galveston, Texas 77554. On information and belief, Maverick is controlled and managed by Defendant Donald A. Bailey and may be considered an alter ego of Defendant Donald A. Bailey.

8.      Sandra L. Bailey ("S. Bailey") is an adult resident citizen of the State of Texas, who may be served with process at 4131 Pointe West Drive, Unite 301, Galveston, Texas 77554.

9.      Niki Weiss ("Weiss") is an adult resident citizen of the State of Texas, who may be served with process at 1828 Dew Valley Drive, Carrollton, Texas 75010.

10.      Ronald K. Lewis ("Lewis") is an adult resident citizen of the State of Alabama, who may be served with process at 580 County Road 2, Gallion, Alabama 36742.

11.      This Court has original subject matter jurisdiction over this action pursuant to numerous provisions of the United States Code, including but not limited to, the Securities Act, 28 U.S.C. § 1331, 15 U.S.C. §§ 77b, 77q and 77v, and 17 C.F.R. § 240.10b-5. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce and of the mails in connection with the transactions, acts, practices and courses of business alleged herein.

12.      This Court has personal jurisdiction over the Defendants in this matter in that they entered into agreements with a Mississippi corporation to be performed in whole or in part in Mississippi; have committed torts in whole or in part in the State of Mississippi; and/or have done some business or performed some character of work and services in the

State of Mississippi.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant M Street Investments, Inc., is a Mississippi corporation whose property which is the subject of the claims is located in Warren County, Mississippi; substantial acts and omissions giving rise to the claims occurred in this judicial district; and the Defendants transacted business in this judicial district.

### Facts

#### A.  Overview

14.     Alexandra Trust is a Texas trust.  Richard Sterritt, Jr. (hereinafter referred to as "Sterritt") was at all times an authorized agent and/or Co-Trustee of Alexandra.  In handling the affairs of Alexandra Trust, Mr. Sterritt obtained the assistance of numerous individuals such as Defendants Parlin, Don Bailey, Sandra Bailey, Lewis, Weiss and an attorney by the name of John Moore.  Sometime in 2011, Mr. Sterritt identified an opportunity in Vicksburg, Mississippi, to acquire a hotel and casino. Prior to that time Plaintiffs had already been pursuing other business opportunities in Mississippi and Louisiana.

15.     Mr. Sterritt solicited the involvement of the individual Defendants to assist Alexandra in obtaining the subject Vicksburg hotel and casino.  The explicit agreement was for Alexandra to form two wholly owned corporations.  The first corporation, Desota Island, LLC, was formed for the purpose of acquiring the subject casino from Delta Investments and Development, LLC.  The transactions involving Desota Island and the acquisition of the casino are relevant background but are not the specific subject of this action.  The second

corporation, Defendant M Street, was a corporation wholly owned by Alexandra formed for the sole purpose of acquiring 100% of the stock of Defendant Great Southern. Defendant Great Southern had previously acquired the Grand Station hotel also from Delta Investments. The agreement was that Alexandra would own 100% of M Street, and all of the stock would be issued to Alexandra. Despite such agreement, 50% of the stock was issued to Don Bailey to hold in trust for Alexandra, and 50% of the stock was issued to Ron Lewis to hold in trust for Alexandra. After having issues with Bailey and Lewis, Sterritt insisted that the stock be re-issued in accordance with the original agreement. Despite the agreement and the insistence of Sterritt, Defendants re-issued the stock as follows:

- 30% to Avondale, a corporation wholly owned by Alexandra;

- 25% to NIT Management, Inc., a corporation wholly owned by Alexandra and created solely to facilitate Alexandra's business and investment opportunities;

- 20% to be held by Ron Lewis for the benefit of Alexandra; and

- 25% to be held by Defendants Don Bailey and/or Brett Maverick to be held for the benefit of Alexandra.

Despite this explicit agreement, Defendants began a course of conduct designed to deprive Alexandra of its ownership interest of M Street, Great Southern and the subject hotel.

16.    This action arises from the unlawful and intentional actions of the Defendants in stripping the sole shareholder (Alexandra) of 100% of its stock in a closely-held corporation (M Street), causing Alexandra to become a minority shareholder in the corporation it caused to be formed and rightfully owns.

17.    Upon wrongfully achieving majority shareholder status, the Defendants

maliciously engaged in a pattern of intentional conduct to oppress and squeeze out Avondale and Alexandra in numerous ways, including but not limited to attempting to dilute the ownership interests of Avondale and Alexandra; changing the Articles of Incorporation to alter the rights and prevent them from meaningful participation in M Street's affairs; converting and misappropriating funds belonging to Avondale and Alexandra; deliberately withholding from and refusing to disclose information to Avondale and Alexandra; disregarding the votes and wishes of Avondale and Alexandra in the election of M Street's board of directors; falsifying corporate records and documents; fraudulently acting and holding themselves out as the duly-elected board of directors of M Street; and engaging in deceitful and egregious self-dealing.

18.     The Defendants' actions in stealing Alexandra's stock – thereby causing it to suddenly become a minority shareholder – were fraudulent and unlawful.  The Defendants subsequently exploited their wrongfully-obtained majority shareholder status by intentionally oppressing and squeezing out Avondale and Alexandra, grossly violating their fiduciary duties to Avondale and Alexandra, frustrating the fundamental purposes of Avondale and Alexandra in entering into the corporate venture, and defeating their reasonable expectations of benefit.

19.     Direct and derivative actions may properly be brought simultaneously.

20.     This is a direct action brought by Avondale and Alexandra as shareholders in M Street and Great Southern to enforce and protect their rights as shareholders, and a derivative action brought by Avondale and Alexandra to enforce and protect the rights of M Street and Great Southern.

21.     This direct and derivative action seeks such legal and equitable remedies as the Court may impose under the facts to enforce and protect the interests and rights of Avondale and Alexandra as shareholders in a closely-held corporation; such legal and equitable remedies as the Court may impose under the facts to enforce and protect the interests and rights of M Street and Great Southern against Defendants Parlin, D. Bailey, S. Bailey, Weiss and Lewis; an accounting of the funds the Defendants have converted; the restoration of Alexandra to sole shareholder status in M Street (and thereby in Great Southern); a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction to enjoin the Defendants from further engaging in the fraudulent and oppressive conduct as described herein and prohibiting the Defendants from taking any further actions which are not in the best interests of Avondale, Alexandra, M Street and/or Great Southern; the Defendants' forfeiture of all benefits and monies they unlawfully obtained; the disgorgement from the individual Defendants of the salaries and the value of benefits they were paid while engaging in the unlawful and wrongful conduct as alleged; the adequate compensation of Avondale and Alexandra for their losses; and punitive damages against the Defendants for their unlawful, egregious, malicious and intentional conduct.

**B.  Detailed factual history.**

22.     Alexandra is a Trust initially formed in February 1995 as the "Sterritt Living Trust."  The name of the Trust was changed to "Alexandra Trust" in October 2007. Alexandra Trust is organized and existing under the laws of the State of Texas.  Richard D. Sterritt, Jr. ("Sterritt"), a non-party, was at all times an authorized agent and/or Co-Trustee of Alexandra.

23.     At all relevant times, Sterritt had the authority to act for and on behalf of Alexandra. Sterritt, at all pertinent times, acted for and on behalf of Alexandra in accordance with his authority, in his capacity as an agent and/or Co-Trustee of Alexandra.

24.     In 2007, Sterritt employed Defendant Parlin to perform bookkeeping, administrative, custodial and accounting work for the entities owned of record by and/or beneficially by Alexandra and by Sterritt and/or for entities which were being formed for the benefit of Alexandra.  At all relevant times, Parlin acted as an agent for Alexandra in the matters he handled for and was engaged in by Alexandra, and Alexandra was Parlin's principal in connection with all such matters.  Parlin assisted Sterritt and Alexandra in facilitating business and investment opportunities for Alexandra.  Defendant Weiss assisted Defendant Parlin in these tasks performed on behalf of Alexandra.

25.     On Alexandra's instructions, Parlin formed Defendant NIT Management, Inc., in November 2007 with the assistance of Defendant Weiss.  Prior to and after the formation of NIT, Alexandra expressly communicated to Parlin, and Parlin fully understood, that Alexandra was to own 100% of the stock in NIT.

26.     At all relevant times, Alexandra is and was the beneficial owner and shareholder of 100% of the stock in NIT based on the following facts:

     a.     To establish beneficial ownership, legal title is not necessary, nor does the question turn on who is the registered owner or "holder of record," nor in whose name the stock may be held;

     b.     Alexandra, through a direct and clear arrangement and understanding with Parlin, rightfully has the equitable power to vote or to direct the voting of the shares of NIT, and/or to dispose or direct the disposition of NIT's shares;

      c.      Upon information and belief, the shares of NIT stock were and are registered in the name of Parlin, an agent for Alexandra, or an entity under the control of either Parlin or Weiss, the scope of whose agency includes holding the NIT stock in trust for the benefit of Alexandra;

      d.      Alexandra's beneficial ownership of NIT's stock arose from a relationship of trust between Alexandra and Sterritt on the one hand, and Parlin on the other; and/or

      e.      Alexandra directed the formation of NIT and rightfully owns its economic interests, and therefore is the beneficial owner and shareholder of NIT's stock.

27.      Thus, Sterritt and Alexandra caused Parlin to form NIT to facilitate the business of Alexandra.  For a period of time, Parlin utilized NIT properly and in the furtherance of the business interests of Alexandra.

28.      During the years within which Parlin assisted Sterritt and Alexandra, Parlin and Sterritt also utilized the services of other individuals to serve the interests of Alexandra, including but not limited to Defendants Don Bailey, Sandra Bailey, Nikki Weiss and Ron Lewis.  As with Defendant Parlin, Defendants Don Bailey, Sandra Bailey, Nikki Weiss and Ron Lewis were engaged at all times to serve the interests of Alexandra.

29.      In regard to the exploration of various business opportunities in Mississippi on behalf of Alexandra prior to the subject transactions, Mr. Sterritt and Alexandra had retained and utilized the services of attorney John Moore ("Moore").  Moore acted as an attorney for Sterritt and Alexandra in their business transactions and dealings, both related and unrelated to the transactions and events which are the subject of this action.  Moore directed invoices for his attorney's fees to Sterritt for payment, and Sterritt caused Moore's attorney's fees to be paid by corporate entities owned (beneficially and otherwise) and

controlled by Sterritt and/or Alexandra.

30.     At all relevant times, as agent and/or Co-Trustee for Alexandra, Sterritt acted on behalf of Alexandra in issuing instructions to Parlin, Don Bailey, Sandra Bailey, Nikki Weiss, Ron Lewis and John Moore.  At all relevant times, Parlin, Don Bailey, Sandra Bailey, Lewis, Weiss and Moore knew, fully understood, and agreed that, in all dealings with them, Sterritt had the authority to act for and on behalf of Alexandra, that Sterritt acted in his capacity as an agent and/or Co-Trustee of Alexandra, and in that representative capacity Sterritt acted for and on behalf of Alexandra.  In addition, these individuals all knew and understood the purpose of NIT Management, and its role in the business affairs of Alexandra.


31.     Sometime in 2011, Mr. Sterritt identified an opportunity for Alexandra to acquire a hotel and casino located at 1310 Mulberry Street, Vicksburg, Mississippi.  The casino and hotel were formally known as the Grand Station Casino and Hotel.  On or about March 29, 2011, prior to the involvement of Alexandra, Defendant Great Southern purchased the subject hotel for approximately $2.2 million from Delta Investments and Development, LLC.

32.     In early December of 2011, Sterritt, on behalf of Alexandra, notified Parlin to contact Mike Starkweather, general counsel for Alexandra, and facilitate Mr. Starkweather's travel to Mississippi for the closing of the hotel which was to take place at the law firm of Watkins, Ludlam, Winter & Stennis.  Parlin and Weiss agreed to serve as officers of an entity known as Magal USA, Inc., wholly owned by Alexandra.  The plan created by Sterritt and agreed to by Parlin was for Alexandra to form two separate

corporations to be wholly owned by Alexandra. The first corporation, Desota Island, LLC, was formed for the purpose of acquiring the subject casino from Delta. The transactions involving Desota Island and the acquisition of the casino are relevant background but are not the specific subject of this Complaint. The second corporation, Defendant M Street, was a corporation wholly owned by Alexandra formed for the sole purpose of acquiring Defendant Great Southern, and thus, the hotel Great Southern had purchased from Delta. These corporations were formed on behalf of Alexandra by Defendants Parlin, Don Bailey, Sandra Bailey and attorney John Moore.

33.     In order to facilitate these transactions, Sterritt and Parlin sought assistance from Don Bailey, Sandra Bailey, Nikki Weiss and Ron Lewis. As stated above, all of these individuals had been involved, in some form or fashion, with prior business and investment opportunities of Alexandra. All of these individuals knew, understood and agreed that the opportunity for the acquisition of the casino and hotel was founded and created by Sterritt for the benefit of Alexandra. All of these individuals knew, understood and agreed that they were acting in the interest of Alexandra in relation to this transaction.

34.     Alexandra caused M Street to be formed for the purpose of owning 100% of the stock in Great Southern. The fees for the corporate documents filed with the Mississippi Secretary of State were paid by entities owned by Alexandra. M Street is a closely-held corporation, having less than 50 shareholders.

35.     The agreement was that Alexandra would own 100% of M Street, and all of the stock would be issued to Alexandra. Despite such agreement, 50% of the stock was issued to Don Bailey to hold in trust for Alexandra, and 50% of the stock was issued to Ron

Lewis to hold in trust for Alexandra. After having issues with Bailey and Lewis, Sterritt

insisted that the stock be re-issued in accordance with the original agreement. Despite the

agreement and the insistence of Sterritt, Defendants re-issued the stock as follows:

- ▸ 30% to Avondale, a corporation wholly owned by Alexandra;

- ▸ 25% to NIT Management, Inc., a corporation wholly owned by Alexandra and created solely to facilitate Alexandra's business and investment opportunities;

- ▸ 20% to be held by Ron Lewis for the benefit of Alexandra; and

- ▸ 25% to be held by Defendants Don Bailey and/or Brett Maverick to be held for the benefit of Alexandra.

Defendants Lewis and Don Bailey/Brett Maverick[2] were to hold their respective interests in

trust, until a decision was made on behalf of Alexandra to transfer those shares to other

specific individuals and/or entities. According to the plan, once M Street acquired Great

Southern, Great Southern would continue to own the hotel. Great Southern would be a

closely-held corporation, having less than 50 shareholders and a wholly-owned subsidiary

of M Street. Everyone further agreed as to who would serve as officers and directors of M

Street as dictated by Sterritt and Alexandra.

36.     Despite this explicit agreement, Defendants began a course of conduct

designed to deprive Alexandra of its ownership interest of M Street, Great Southern and the

subject hotel. Although Defendant M Street was formed by Parlin, et al, Defendants did not

issue the stock of M Street according to the agreement of all involved. In fact, Defendants

---

[2]Upon information and belief, Defendant Brett Maverick Venture Fund, LP, is controlled and managed by Defendant Donald A. Bailey and may be considered an alter ego of Defendant Donald A. Bailey. When referring to Don Bailey, Plaintiffs hereby incorporate Brett Maverick in that certain of the acts committed by Defendant Bailey may have been committed under the guise of Defendant Brett Maverick.

issued the stock in a manner designed to weaken and/or completely deprive Alexandra of its ownership of M Street.  If Defendants were successful in depriving Alexandra of its ownership of M Street, they would thereby deprive M Street of its ownership of Great Southern and the subject hotel.

December of 2011

      37.     In December of 2011, as contemplated by the parties' agreement, M Street purchased Great Southern which had title to the subject hotel.  Not only did Defendants fail to issue the M Street stock in accordance with the explicit agreement and direction from Alexandra, but Sterritt and Alexandra learned that Parlin had intentionally and unlawfully converted NIT's stock to himself from the rightful beneficial owner and shareholder, Alexandra.  Parlin has stolen and converted funds from Alexandra, and has fraudulently and unlawfully seized management and control of NIT, all in gross violation of his fiduciary duties to Alexandra as its agent.[3]  One of the goals which Parlin attempted to accomplish by stealing NIT was to seize and secure control over M Street, Great Southern and the subject hotel.  Defendants Don Bailey, Sandra Bailey, Nikki Weiss and Ron Lewis participated in Parlin's plan to steal the hotel from Alexandra from the inception of the plan.

June, 2012

      38.     After their initial theft of the corporate ownership of M Street, Great Southern and the subject hotel, Defendants began a series of illicit corporate actions designed to strengthen their position of power and strength over Avondale and Alexandra.  Such

---

[3]Plaintiffs have learned that Parlin's scheme in regard to the foregoing hotel is part of a larger plan to defraud Alexandra from numerous other assets, properties and interests.

illegal actions, taken by Defendants on behalf of M Street, Great Southern and NIT, were also designed in an attempt to retroactively legitimize their initial fraud.[4]

39.     In connection with the June 27, 2012, election of corporate officers and directors of M Street, the then-president of Avondale (Kenneth Bickford) sent Avondale's voting proxy to Parlin with detailed instructions to Parlin as to how to vote Avondale's shares in the election of officers and directors. As proxy holder for Avondale, Parlin acted as an agent for his principal Avondale in connection with the task of voting Avondale's shares as instructed by Avondale.

40.     The proxy expressly and clearly directed Parlin to cast Avondale's votes for Donald Hodge ("Hodge") as president, and Michael Starkweather ("Starkweather") as vice-president of M Street, and also for Hodge and Starkweather as M Street's two directors. Mr. Bickford at no time had the intention of voting Avondale's shares to make Parlin an officer or director of M Street.  Mr. Parlin intentionally failed and refused to follow Mr. Bickford's proxy directions and cast the votes for a different set of officers and directors.

41.     After Bickford's instructions and wishes were ignored, Parlin fraudulently altered the minutes of that meeting so that they reflected only the removal of Bailey and Lewis as directors of M Street.  Parlin fraudulently created minutes purporting to represent actions taken by the written consent of shareholders, and substituted himself (Parlin) for Hodge and Starkweather as directors of the corporation.  Parlin forged the proxy so as to give

---

[4]By listing certain actions of the Defendants chronologically in the antecedent paragraphs, Plaintiffs are not suggesting that these facts constitute an exhaustive listing of the fraudulent and wrongful acts of Defendants.  Plaintiffs are attempting to illustrate the highlights of the Defendants' plan and scheme to deprive Plaintiffs of their rightful property.

himself majority control (25% NIT and 30% Avondale).  Parlin also voted the NIT shares against the wishes and instructions of Alexandra, for which Parlin was acting as an agent. The fraudulently altered minutes purport that 55% of the outstanding shares of M Street were cast in favor of Parlin's "election" as president and sole director of M Street.  When Mr. Bickford objected to Parlin's unlawful actions to M Street's corporate attorney, John Moore, Moore wrote Mr. Bickford a scathing and defamatory letter in which he wholly dismissed Mr. Bickford's assertions, and threatened Mr. Bickford with legal action against him should he continue to voice his objections.

42.     The boards of directors of Great Southern and M Street are fraudulently constituted as a result of the forged and altered documents, and Parlin's intentional failure as proxy to follow the instructions of Avondale and Alexandra in the voting of their shares.

43.     Parlin used the fraudulent, altered and forged minutes and his disobedience as proxy in the voting of Avondale's and Alexandra's shares to assert the claim that he was the president and sole director of M Street.  In truth, Parlin had and has no lawful claim to be the president of M Street, nor does Parlin own NIT, or in turn any percentage of M Street or Great Southern.  These acts were an attempt to further the initial fraud.

August, 2012

44.     In August of 2012, Hurricane Isaac severely damaged the subject hotel. M Street, filed an insurance claim for said damage under a policy procured by M Street with Zurich American Insurance Company after its purchase of Great Southern.[5]  The amount of

---

[5]Litigation concerning that claim is currently pending in this Court in the action styled, M Street Investments, Inc. v. Zurich American Insurance Company et al, United States District Court for the Southern District of Mississippi, No. 5:13-cv-00047-DCB-MTP.

the claim which will be paid by Zurich has not been determined.  However, Zurich has already paid approximately $600,000.00 to M Street.  Defendants have failed to account for the spending of those funds, have misappropriated those funds and are, upon information and belief, continuing to utilize those funds or the fruits thereof to further the fraud on Alexandra.

45.     In fact, Defendants did not disclose to Plaintiffs that Defendants had received the subject insurance funds. Defendant Parlin's omission of this material fact was intentional and intended to deceive the Plaintiffs.  Parlin employed the use of interstate mail to convey the material, false representation above, and/or to commit the fraudulent omission of material fact.  On information and belief, one or more of the individual Defendants have converted all or a portion of these funds to their personal use.  No funds were paid to Avondale or Alexandra.  The Defendants have intentionally withheld and refused to disclose from Alexandra and Avondale all information regarding the receipt and disposition of those funds. These acts were an attempt to further the initial fraud.

January through April, 2013

46.     On January 22, 2013, M Street counsel John Moore emailed Sterritt a "Stock Transfer Agreement" ("STA") on behalf of Parlin.  The email dated January 22, 2013, from Moore and Parlin to Sterritt (attaching the STA) constitutes a communication in interstate commerce by the use of the mails.  The STA referred to Alexandra Trust as the "Trust", and expressly acknowledged, "WHEREAS, NIT currently holds 9,900,000 outstanding and issued shares of common stock in M Street in trust for the benefit of the Trust or the designee of the Trust."

47.     In the STA, Parlin demanded $500,000.00 to transfer to Alexandra the stock certificates for the M Street stock which, in the same document, NIT expressly acknowledged it was holding in trust for the benefit of Alexandra.

48.     Parlin's representation that it held "9,900,000 outstanding and issued shares of common stock in M Street" was false.

49.     Only three (3) months later, Moore, acting as corporate counsel for M Street, represented in a letter to Ken Bickford:

> [L]et me disabuse you of the impression that there are 10,000,000 shares of [M Street] stock 'issued' to anyone. While it is true that 10,000,000 shares of common stock were authorized, the issued stock remains today just as it was when Avondale was issued its shares. Avondale Shipyards, Inc. owns 40,000 shares of issued stock; Brett Maverick Venture Funds LP owns 30,000 shares of issued stock; NIT Management, Inc. owns 34,000 shares of issued stock; and Ronald K. Lewis owns 30,000 shares of issued stock.

50.     Parlin admitted that the only M Street stock held by NIT were those shares which it held in trust for the benefit of Alexandra. Parlin acknowledged that Alexandra was the rightful shareholder and owner of the M Street stock. A "beneficial shareholder" is a "shareholder," with all attendant rights of ownership in a corporation's stock.

51.     Alexandra already owned the stock for which Parlin demanded $500,000.00. At all relevant times, Parlin was acting as an agent for Alexandra, specifically, to perform the very task he admits having the duty to perform: to hold M Street's stock in trust for the benefit of Alexandra. These acts were an attempt to further the initial fraud.

<u>May, 2013</u>

52.     Defendants continued their manipulation and fraudulent composition of the boards of the subject corporations when they fraudulently placed the current slate of directors

and officers in place at a shareholders meeting in Galveston, Texas in May 2013. At this meeting, Parlin was allowed to vote the shares of NIT rather than Plaintiff Alexandra, the rightful and beneficial owner and shareholder of NIT. Once again, Parlin, with the assistance of Weiss and other Defendants, abused the trust and confidence of Alexandra and Avondale to further alienate M Street and Great Southern from their rightful owners. These acts were an attempt to further the initial fraud. June of 2013

53. Utilizing their fraudulently obtained majority shareholder status in M Street, in June 2013, Don Bailey, Lewis and Parlin amended Great Southern's Articles of Incorporation to name themselves as the three directors of Great Southern. The purported authority for this action is and was fraudulently obtained, and Bailey, Lewis and Parlin are fully aware of the fact.

54. Next, the purported majority shareholders (Parlin via the misuse or misappropriation of the Ken Bickford Proxy of Avondale shares, Weiss acting as President of NIT, Bailey and Lewis) voted through the unlawfully constituted boards of directors of M Street to deliberately issue additional shares of the corporation at a time when Defendants knew that it was impossible for the purported minority shareholder, Avondale, to purchase the additional shares to which it is otherwise entitled. The wrongful, fraudulent, and unlawful actions of Defendants Parlin, Weiss, Bailey and Lewis are a proximate cause of Avondale's financial inability to exercise its option to purchase stock, and are also the cause of Alexandra's alleged status as a minority shareholder, when in fact Alexandra is the rightful owner of all of the shares in M Street. As a result of these improper actions, Avondale and Alexandra have been deprived of their rights to elect the board and officers of their choosing.

Such planned action was rescinded after the filing of a Complaint for Temporary Restraining Order for the stated reason that the planned stock issuance was against the corporate bylaws.[6]

55. Defendants Parlin, Weiss, Bailey and Lewis schemed to vote through the unlawfully constituted boards of directors of M Street to deliberately issue additional shares of the corporation primarily to dilute Avondale's interest in M Street. This action was taken by Defendants based upon their collective and false assertion that Alexandra's only interest in M Street was its ownership of Avondale.

July of 2013

56. After unlawfully and illegally taking control over M Street, Great Southern and the subject hotel, Defendants entered into a transaction whereby M Street, without authority, purportedly sold the hotel to an entity known as Vicksburg Hotel, LLC.[7] Specifically, on July 19, 2013, the fraudulently constituted boards of directors of Great Southern and M Street voted to illegally sell the hotel to Vicksburg Hotels, LLC, as part of a proposed Settlement Agreement between M Street and Great Southern, and the United States BankruptcyTrustee for Delta Investments[8], which had filed bankruptcy after selling

---

[6]The filing of this Complaint by Avondale and Alexandra constituted the initiation of the action in Warren County Chancery Court entitled *Avondale Shipyards, Inc., and Alexandra Trust v. M Street*, Warren County Chancery Court, No. 2013-178-GN.

[7]Upon information and belief, Vickburg Hotel, LLC, is owned in whole or in part by a man named Charles Lambert, who is listed as the Incorporator with the Mississippi Secretary of State. Upon information and belief, Charles Lambert is the son-in-law of a lady by the name of Lori Lee Stewart. Ms. Stewart is married to a man by the name of Greg Stewart. Upon information and belief, Greg Stewart is a former client of attorney John Moore.

[8]Delta's bankruptcy is pending in the United States Bankruptcy Court for the Southern District of Mississippi, Case No. 12-01160-NPO. Plaintiffs maintain that Defendants are actively and currently attempting to illegally legitimize their conduct, including but not limited to the transaction with Vicksburg Hotels, LLC, within Delta's bankruptcy. More specifically, Defendants are attempting to obtain an "after the fact" and "backdoor" approval of their sale of the hotel to Vicksburg Hotels, LLC, through the Compromise and Settlement with the Trustee. Avondale and Alexandra filed an objection to the Joint

the hotel to Great Southern. Alexandra and Avondale, the sole rightful owners of Great Southern and M Street, were not provided proper notice of the purported vote, nor did Alexandra or Avondale consent to the sale of the Hotel. Despite such improprieties, on or about July 14, 2013, Great Southern executed a Special Warranty Deed conveying the hotel to Vicksburg Hotel, LLC. The Deed was filed in the Warren County Chancery Court land records on or about July 19, 2013.[9] Defendants took this action without authority in direct violation of the express wishes of Alexandra and Avondale, the rightful sole shareholders in M Street and Great Southern. Until the fraudulently constituted boards of directors of Great Southern and M Street voted to sell the hotel in July 2013, the hotel was at all relevant times owned by Great Southern.

57.     As the largest currently recognized and acknowledged single shareholder of M Street, the parent of Great Southern, Avondale objects to and seeks to enjoin the contemplated sale of the Hotel pursuant to Miss. Code Ann. § 79-4-3.04(b)(1) ("A corporation's power to act may be challenged ... [i]n a proceeding against the corporation to enjoin the act."). Although Defendants have refused to provide the detailed terms of the sale, upon information and belief, Plaintiffs maintain that the terms of the proposed sale of the Hotel are commercially unreasonable and contrary to the best interest of Great Southern and

---

Motion to Approve Compromise and Settlement on July 31, 2013. However, the Bankruptcy Court has ruled that Avondale and Alexandra do not have standing to object to said Compromise and Settlement. To be clear, Plaintiffs are not suggesting that the Trustee for Delta is aware of the fraud and wrongdoing committed by Defendants. On the contrary, Plaintiffs maintain that Defendants have misrepresented to the Trustee that they had the authority to sell the hotel to Vicksburg Hotels, LLC.

[9]On October 21, 2013, Avondale filed a Memorandum Giving Notice of Fraudulent Conveyance of Real Property and Interests in Real Property without Corporate Authority in Violation of Mississippi Law within the land records of Warren County, Mississippi. Litigation over the continuing validity of that Memorandum is currently pending in the action styled, *Avondale Shipyards, Inc., and Alexandra Trust v. M Street*, Warren County Chancery Court, No. 2013-178-GN.

M Street.  The sale, as a whole, is most certainly contrary to the wishes of Alexandra, the true and rightful owner of 100% of M Street.

58.     The hotel was reportedly appraised by the City of Vicksburg at $29 million. The proposed sale to Vicksburg Hotel, LLC, is for a small fraction of that price.  Reportedly, although Great Southern and M Street claim to need cash, the contemplated sale of the hotel calls for no present cash payment.  The agreement to sell the hotel was made by a fraudulently constituted slate of officers and directors of M Street and Great Southern. The present boards of directors of Great Southern and M Street, in violation of their fiduciary duties, have expressed no interest or willingness to obtain a commercially reasonable value for the hotel, therefore causing waste to M Street's sole tangible asset. The present boards of directors of Great Southern and M Street further lack the legal authority to solicit any sale of the asset.  The ulterior motive of Bailey, Lewis and Parlin in selling the hotel is to convert substantial anticipated Zurich insurance proceeds payable to M Street to their personal use, rather than use them to repair the hotel with the anticipated insurance claim proceeds. Authorization of the sale of the Hotel based on action of the present boards of directors of M Street and Great Southern would sanction and perpetuate a fraud.

August of 2013

59.     On August 14, 2013, the Defendants informed Avondale that an additional 134,000 shares of stock in M Street would be issued only nine (9) days later, on August 23, 2013, and that Avondale had only those nine (9) days in which to decide whether it would purchase the additional shares of M Street stock.  The Defendants offered to sell M Street stock to Avondale at $1.00 per share.  Avondale was offered 40,000 shares of stock, which,

if purchased, would allow Avondale to maintain a 30% ownership interest in M Street. Defendants Bailey, Parlin and Lewis would be able to purchase the number of shares sufficient to maintain their purported respective percentage of ownership in M Street.

60.     Despite the fact that the Defendants knew and fully understood that Alexandra was the beneficial owner and shareholder of 100% of the M Street stock, the Defendants failed and refused to offer Alexandra the right to purchase additional shares. The price per share of the stock was grossly undervalued. On August 20, 2013, Avondale and Alexandra, through counsel, wrote to M Street requesting that the issuance of additional shares of its stock be halted. On August 20, 2013, M Street president Bailey responded to the Plaintiffs' letter and offered to delay the issuance of the additional stock by only one business day, until August 26, 2013. In his letter, Bailey represented that the purpose of the stock issuance was to raise funds needed to pay expenses that M Street and Great Southern had recently incurred. Bailey represented that neither M Street nor Great Southern had the funds necessary to meet those financial obligations. Bailey's representations were false and material, and were made in connection with the offer or sale of M Street stock, a "security."

61.     The actual, undisclosed purpose of Defendants' additional stock issuance was to "squeeze out" Avondale and Alexandra as shareholders in the subject corporations, and to dilute their proportionate ownership interests in M Street and Great Southern in anticipation of a substantial recovery of insurance proceeds. The Defendants failed to demonstrate any valid business justification for the issuance of additional shares of M Street stock.

September of 2013

62.    Defendants' fraudulent acts are not at an end.  Subsequent to their failed, unlawful attempt to dilute Avondale's interest in M Street, on September 6, 2013, the present M Street Board, without notice to Avondale, increased the majority required for corporate action from a simple majority to a two-thirds majority.  This action was taken for the unlawful and oppressive purpose of thwarting any future corporate action that Alexandra might take through its rightful ownership of the companies owning a minimum of 55% of M Street.  Once again, Defendants are attempting to retroactively legitimize their improper actions and to further alienate Avondale and Alexandra and thwart their rightful assertion of ownership over M Street, Great Southern and the hotel.

63.    Defendants Parlin, Bailey and Lewis, the directors and officers of M Street, Great Southern, and NIT, fraudulently benefitted by their wrongful and unlawful acts. Defendants Parlin, Bailey and Lewis purport to constitute a majority (70%) of the shareholders of M Street (and therefore Great Southern), when in actuality Alexandra is and should be the rightful sole owner of those corporations, through Alexandra's ownership of Avondale (30%), NIT (25%) and the beneficial interests held in trust by Don Bailey (25%) and Lewis (20%).

64.    Defendants Parlin, Don Bailey, Sandra Bailey, Nikki Weiss and Ron Lewis all have actively engaged in the wrongful conduct.  In addition, Attorney Moore, previously the attorney for Sterritt and Alexandra (and other entities owned or controlled by Sterritt or Alexandra or for which Sterritt and/or Alexandra served as an agent), now acts as corporate counsel for Great Southern and M Street and participated in the actions taken by

Defendants.[10]

65.     Defendants Parlin, Don Bailey/Brett Maverick and Ron Lewis spearheaded the hostile and fraudulent takeover of M Street and Great Southern from Alexandra and Avondale. Upon information and belief, these Defendants have been and continue to be involved in virtually every aspect of the improper conduct.

66.     Defendant Sandra Bailey, the wife of Defendant Don Bailey, participated in such wrongful conduct in a meaningful yet more limited manner. More specifically, after having rendered professional paralegal/administrative services for the Alexandra Trust entities, and incident to performing paralegal and accounting work for NIT, Sandra Bailey acted in concert with Don Bailey by drafting fraudulent corporate documents perpetuating actions by a fraudulently constituted board of directors. At such times, she was possessed with actual and constructive knowledge of Alexandra's beneficial ownership and right to control NIT. Defendant Sandra Bailey committed such acts with the full knowledge and purpose of furthering the plan of Defendants to fraudulently take these interests from Avondale and Alexandra.

67.     Likewise, Defendant Nikki Weiss' role was less comprehensive than the primary wrongdoers but no less sinister and culpable. Defendant Weiss actively aided and abetted Parlin in breaching his fiduciary duties to Alexandra by, among other things, intentionally and knowingly conspiring with Parlin to unlawfully convert NIT's stock from

_____

[10]Mr. Moore is not a Defendant in this action.  However, Alexandra Trust, by and through it's agent, Richard Sterritt, Jr., is currently in litigation with Moore regarding this matter in the 298th District Court of Dallas County, Texas, i.e., *Sterritt v. Weiss and Moore*, Dallas County District Court No. DC-13-13173-M.

Alexandra, stealing and converting funds from Alexandra, and by fraudulently seizing management and control over NIT's affairs. Defendant Weiss committed such acts with the full knowledge and purpose of furthering the plan of Defendants to fraudulently take these interests from Avondale and Alexandra.

68.     To date, Defendants continue to take actions in direct violation of their duties to Alexandra and Avondale. Defendants consistently refuse to provide information regarding M Street, Great Southern and the subject hotel. Defendants are continuing their efforts on a daily basis to further harm Alexandra and Avondale and alienate their interests in M Street, Great Southern and the subject hotel.

## Claims

Direct and Derivative

69.     Direct and derivative actions may properly be brought simultaneously.

70.     As stated above, this is a direct action brought by Avondale and Alexandra as shareholders in M Street and Great Southern to enforce and protect their rights as shareholders, and a derivative action brought by Avondale and Alexandra to enforce and protect the rights of M Street and Great Southern.

Alexandra–Prerequisites

71.     Alexandra was and is a beneficial owner and shareholder of M Street and Great Southern at the time of the transactions complained of in this action.

72.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

73.     Alexandra, through counsel, attempted to comply with the provisions of

Mississippi law constituting prerequisites for filing this derivative action. Pursuant to Miss. Code Ann. § 79-4-7.42, on August 20 and 23, 2013, Alexandra, through counsel, sought to obtain action from the Board of Directors by letters to the purported President of M Street, Donald Bailey.

74.     The Boards of Directors of M Street and Great Southern have rejected those demands. See Miss. Code Ann. § 79-4-7.42. The reason the Boards of Directors of M Street and Great Southern rejected Alexandra's demands is that Defendants Parlin, Bailey and Lewis, the purported directors and officers of M Street, Great Southern and NIT, fraudulently benefitted by their wrongful and unlawful acts, as described herein.

75.     Alexandra fairly and adequately represents the interests of M Street and Great Southern in enforcing the rights of the corporations.

76.     In the alternative, because M Street and Great Southern are closely-held corporations, should the Court find that Alexandra has not complied with the pre-filing prerequisites ordinarily imposed upon shareholders in bringing derivative actions, Alexandra respectfully requests that the Court exercise its discretionary authority to treat this action raising derivative claims as a direct action, exempt them from those restrictions and defenses applicable only to derivative actions, and order an individual recovery. See *Derouen v. Murray*, 604 So. 2d 1086, 1093 n.2 (Miss. 1992); *Investor Resource Services, Inc. v. Cato*, 15 So. 3d 412, 422 (Miss. 2009).

77.     In so doing, this action will not unfairly expose the corporations or the Defendants to a multiplicity of actions, materially prejudice the interests of creditors of the corporations, or interfere with a fair distribution of the recovery among all interested persons.

Id.

## Avondale Shipyards, Inc.–Prerequisites

78.     Alexandra caused Avondale to be formed in September 2011.  Alexandra owns 100% of the stock in Avondale.

79.     Avondale was and is an owner and shareholder of M Street and Great Southern at the time of the transactions complained of in this action.

80.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

81.     Pursuant to Miss. Code Ann. § 79-4-7.42, on August 20 and 23, 2013, Avondale, through counsel, sought to obtain action from the Board of Directors by letters to the purported President of M Street, Donald Bailey.

82.     The Boards of Directors of M Street and Great Southern have rejected those demands.  See Miss. Code Ann. § 79-4-7.42.  The reason the Boards of Directors of M Street and Great Southern rejected Avondale's demands is that Defendants Parlin, Bailey and Lewis, the purported directors and officers of M Street, Great Southern and NIT, fraudulently benefitted by their wrongful and unlawful acts, as described herein.

83.     Avondale fairly and adequately represents the interests of M Street and Great Southern in enforcing the rights of the corporations.

84.     In the alternative, because M Street and Great Southern are closely-held corporations, should the Court find that Avondale has not complied with the pre-filing prerequisites ordinarily imposed upon shareholders in bringing derivative actions, Avondale respectfully requests that the Court exercise its discretionary authority to treat this action

raising derivative claims as a direct action, exempt them from those restrictions and defenses applicable only to derivative actions, and order an individual recovery. See *Derouen v. Murray*, 604 So. 2d 1086, 1093 n.2 (Miss. 1992); *Investor Resource Services, Inc. v. Cato*, 15 So. 3d 412, 422 (Miss. 2009).

85.     In so doing, this action will not unfairly expose the corporations or the Defendants to a multiplicity of actions, materially prejudice the interests of creditors of the corporations, or interfere with a fair distribution of the recovery among all interested persons. Id.

### Count I
### Accounting & Discovery

86.     The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

87.     The Defendants' actions have been conducted, in whole or in part, in secrecy and behind closed doors, and discovery is needed to uncover the true scope of the scheme and conspiracy perpetrated on Plaintiffs, as described above.

88.     To adequately determine the actual loss to the Plaintiffs regarding their claims, the Court will have to ascertain which of the Defendants converted funds and property, where those various assets were diverted, and how much each Defendant has profited from their unlawful conduct as alleged herein.

89.     There was at all relevant times a fiduciary and/or trust relationship between the Plaintiffs and the Defendants.

90.     To Plaintiffs' knowledge, Defendants NIT, Don Bailey/Maverick, Lewis and

Avondale are purported shareholders in M Street and Great Southern, both of which are closely-held corporations. Due to the fraudulent scheme, Defendants NIT, Don Bailey/Maverick and Lewis are the purported majority shareholders of M Street and Great Southern. As shareholders in a closely-held corporation, and as the purported majority shareholders of a closely-held corporation, Defendants NIT, Don Bailey/Maverick and Lewis owe a fiduciary duty to Avondale as the minority shareholder of 30% of the stock of M Street and Great Southern.

91.    Alexandra is the beneficial owner and shareholder of stock in M Street and Great Southern, both of which are closely-held corporations. As shareholders in a closely-held corporation, and as the purported majority shareholders of a closely-held corporation, Defendants Don Bailey/Maverick and Lewis owe a fiduciary duty to Alexandra as the minority shareholder of 30% of the stock of M Street and Great Southern.

92.    At all relevant times, Parlin has acted as an agent for his principal, Alexandra, and as such owes a fiduciary duty to Alexandra.

93.    Parlin has acted as a de facto proxy-holder for Alexandra and Avondale in the voting of the respective shares of stock in M Street. As such, Parlin owes the same fiduciary duty that an agent owes to his principal. Parlin owes a fiduciary duty to Alexandra and Avondale in the performance of his duties as a de facto proxy-holder.

94.    Bailey, Lewis and Parlin are purported officers and directors of M Street, a closely-held corporation, and as such owe a fiduciary duty to the Plaintiffs.

95.    Bailey, Lewis and Parlin are purported officers and directors of Great Southern, a closely-held corporation, and as such owe a fiduciary duty to the Plaintiffs.

96.     An accounting is necessary to track, ascertain and recover the assets and profits resulting from the unlawful actions of the Defendants.  Discovery is needed to ascertain the exact steps taken by Defendants to defraud Avondale and Alexandra and deprive them of their rightful ownership of M Street, Great Southern and the subject hotel.

**Count II**
**Injunctive Relief**

97.     The allegations contained in the foregoing are incorporated herein as if reproduced in full.

98.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the facts previously asserted herein, Plaintiffs seek equitable relief on application for entry of a permanent injunction, preliminary injunction and an emergency temporary restraining order.

99.     The  specific facts shown clearly indicate that immediate and irreparable injury, loss and damage will result to Plaintiffs in the event Defendants are allowed to continue to take actions on behalf of M Street and/or Great Southern which are against the best interests of Avondale, Alexandra, M Street and Great Southern.  More specifically, Plaintiffs request that the Court enjoin Defendants from disposing, selling, transferring, liquidating or otherwise alienating any assets or property of M Street and/or Great Southern. Plaintiffs further request that the Court enjoin M Street and Great Southern from issuing any other shares of stock and/or otherwise taking any further actions to dissipate, destroy or lessen the value of Plaintiffs' interest in the subject corporations and the assets and property of the subject corporations.  Finally, Plaintiffs respectfully request that the Court require Defendants to  provide  comprehensive  information  to  and  consistently  and  properly

communicate with Plaintiffs regarding the past and future business of M Street and Great Southern, until this action can be decided on its merits.

100.    Counsel for Plaintiffs certifies to the Court that he will attempt to immediately transfer a copy of this application to all Defendants, and will request that they be present to argue the merits of such relief immediately or whenever counsel for Plaintiffs may be heard by the Court in an emergency hearing. In the event Defendants, or their counsel are unavailable, the Court should entertain Plaintiffs' application for entry of a temporary restraining order ex parte based on the facts previously asserted.

101.    Based on these facts, Plaintiffs plead that a temporary restraining order should be entered, "... to protect the plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits...' by maintaining the status quo until such trial may be help. F. R. Civ. P. 65(b). Specifically, Plaintiffs plea that the Court will enjoin Defendants, their counsel, employees, agents and/or representatives, from taking any actions as set forth above, until such time as this Court may conduct an emergency hearing on the matters set forth herein.

102.    In the event the Court grants Plaintiffs' application for entry of a temporary restraining order, Plaintiffs plead that such order should be in effect, until the Court can rule on the merits of Plaintiffs' request for a preliminary injunction and/or permanent injunction. Furthermore, Plaintiffs respectfully request that the Court waive any bond in connection to the prayer of injunctive relief.

### Count III
### Conversion

103.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

104.    Defendants Parlin, Don Bailey, Weiss and Lewis have wrongfully taken possession of or exercised dominion in exclusion and defiance of the Plaintiffs' right to certain funds, assets, and/or property, including but not limited to insurance proceeds and funds received from Zurich, and ownership interests in M Street and Great Southern.

105.    Defendants Parlin, Don Bailey, Weiss and Lewis continue to assert and exercise such wrongful dominion and control, despite demand to return or restore to the Plaintiffs the assets, funds and/or property, and voting rights, management & control which are rightfully owned by the Plaintiffs.

106.    The Plaintiffs are entitled to the return of the illegally converted assets, funds and/or property.

107.    Because of the willful, wanton, deceitful, and egregious nature of the conversion of these Defendants, they should be assessed with punitive damages in addition to appropriate compensatory damages.

## Count IV
## Breach of Fiduciary Duty

108.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

109.    There was at all relevant times a fiduciary and/or trust relationship between the Plaintiffs and Defendants Parlin, Weiss, Don Bailey, Sandra Bailey and Lewis.

110.    Due to the improper conduct of Defendants as outlined above, NIT, Don

Bailey/Brett Maverick, Lewis and Avondale are purported to be shareholders in M Street and Great Southern, both of which are closely-held corporations. NIT, Maverick and Lewis are purported to be the majority shareholders of M Street and Great Southern. As shareholders in a closely-held corporation, and as the purported majority shareholders of a closely-held corporation, NIT, Maverick and Lewis owe a fiduciary duty to Avondale as the minority shareholder of 30% of the stock of M Street and Great Southern.

111.    Alexandra is a beneficial owner and shareholder in M Street and Great Southern, both of which are closely-held corporations. As shareholders in a closely-held corporation, and as the purported majority shareholders of a closely-held corporation, Maverick and Lewis owe a fiduciary duty to Alexandra as a shareholder of the stock of M Street and Great Southern.

112.    At all relevant times, Parlin has acted as an agent for his principal, Alexandra, and as such owes a fiduciary duty to Alexandra.

113.    Parlin has acted as proxy-holder for Alexandra and Avondale in the voting of the shares of stock in M Street owned by Alexandra and Avondale. As such, Parlin owes the same fiduciary duty that an agent owes to his principal. Parlin owes a fiduciary duty to Alexandra and Avondale in the performance of his duties as proxy-holder.

114.    Bailey, Lewis and Parlin are purported officers and directors of M Street, a closely-held corporation, and as such owe a fiduciary duty to Alexandra and Avondale.

115.    Don Bailey, Sandra Bailey, Lewis and Weiss conspired with, and aided and abetted Parlin in the breach of his fiduciary duties to Plaintiffs.

116.    Bailey, Lewis and Parlin are purported officers and directors of Great

Southern, a closely-held corporation, and as such owe a fiduciary duty to Alexandra and Avondale.

117.    Weiss purports to be an officer of NIT, and as such owes a fiduciary duty to Alexandra, NIT's rightful owner.

118.    Defendants Parlin, Weiss, Don Bailey and Lewis owed fiduciary duties to the Plaintiffs, which required them to exercise the utmost good faith, honesty, allegiance, and loyalty to the Plaintiffs.

119.    Defendants Parlin, Weiss, Don Bailey and Lewis owed duties of undivided loyalty to the Plaintiffs.

120.    Defendants Parlin, Weiss, Don Bailey and Lewis were in a position of trust and confidence with the Plaintiffs.  Based on their dominating and overpowering position over the Plaintiffs, Defendants Parlin, Weiss, Don Bailey and Lewis owed a fiduciary duty to the Plaintiffs.

121.    Defendants Parlin, Weiss, Don Bailey and Lewis owed and owe the Plaintiffs an enhanced and heightened fiduciary duty, due to the status of Avondale and Alexandra as purported minority shareholders in a closely-held corporation.

122.    Defendants Parlin, Weiss, Don Bailey and Lewis intentionally breached this standard of care by engaging in at least the following conduct:

      a.    Converting for their own use insurance proceeds that rightfully belong to M Street and Great Southern;

      b.    Converting for their own use insurance proceeds that rightfully belong, in substantial part, to the Plaintiffs;

c.     Failing and refusing to disclose to the Plaintiffs material facts and information in connection with the corporate governance and affairs of M Street and Great Southern;

d.     Withholding material facts and information regarding M Street and Great Southern from the Plaintiffs;

e.     Failing to disclose to the Plaintiffs their intention to sell the hotel, or providing notice to the Plaintiffs of the same;

f.     Depriving Avondale and Alexandra of their right to vote in proportion to their ownership shares for or against the proposed sale of the hotel (the Corporation's sole real property asset);

g.     Acting for improper and unlawful purposes in voting to issue additional shares of M Street stock;

h.     Acting in their own best interests, and not only failing to act in the best interest of the Plaintiffs, but by acting directly against and in opposition to the Plaintiffs' interests;

i.     Acting in bad faith in their actions toward the Plaintiffs;

j.     Oppressing and squeezing out Alexandra and Avondale as purported minority shareholders;

k.     As to Parlin, improperly and unlawfully seizing ownership, management and control of NIT;

l.     As to Parlin, as agent for his principal Alexandra, converting to his own use and control the stock in M Street which he had a duty to hold in trust and for the

benefit of Alexandra;

      m.     As to Parlin, as agent for his principal Alexandra, using Alexandra's assets, including but not limited to the stock in M Street, for his own purposes under an adverse claim, unreasonably refusing to surrender the same on demand, manifesting that he would and will not surrender the same except on conditions which he was and is not privileged to exact, improperly causing the title or indicia of title to be placed in his own name in bad faith, and otherwise substantially deviating from his authority as agent for Alexandra;

      n.     As to Parlin, as proxy-holder and agent for Alexandra and Avondale, by intentionally disobeying the express instructions the Plaintiffs issued to Parlin in the voting of their shares of stock in M Street, in voting the shares of Alexandra and Avondale in favor of his own interests and against the Plaintiffs' interests, by committing fraud in his communications with the Plaintiffs, and by intentionally withholding and failing to disclose material facts and information from the Plaintiffs;

      o.     As to Parlin, fraudulently and unlawfully altering the minutes of one or more meetings of the board of directors of M Street; and

      p.     Bailey, S. Bailey, Lewis and Weiss conspired with, and aided and abetted Parlin in the breach of his fiduciary duties to the Plaintiffs.

123.    As a direct and proximate result of the breaches of their fiduciary duties by Defendants Parlin, Weiss, Don Bailey and Lewis, the Plaintiffs have incurred and continues to incur substantial actual, incidental, and consequential damages.

124.    Because of the willful, wanton, and egregious nature of the breaches of their

fiduciary duties by Defendants Parlin, Weiss, Don Bailey and Lewis to the Plaintiffs, Defendants Parlin, Weiss, Don Bailey and Lewis should be assessed with punitive damages.

**Count V**
**Breach of Contract**
**(Proxy Vote)**

125.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

126.    The contracts between Avondale and Alexandra on the one hand, and Parlin on the other, obligated Parlin to, among other things, vote the Plaitniffs' respective proxies as instructed in connection with the June 2012 board of directors' meeting of M Street.

127.    Parlin breached his contract with the Plaintiffs in at least the following ways:

a.    Intentionally disobeying the express instructions the Plaintiffs issued to Parlin in the voting of their shares of stock in M Street;

b.    Voting the Plaintiffs' shares in favor of his own interests and against the Plaintiffs' interests;

c.    Committing fraud in his communications with the Plaintiffs, and by intentionally withholding and failing to disclose material facts and information from the Plaintiffs;

d.    Fraudulently and unlawfully attaching the proxy provided by the then-president of Avondale, Ken Bickford, and attaching it to documents that were altered and substituted by Parlin;

e.    Breaching his duties of loyalty and trust owed to the Plaintiffs;

f.    Failing to disclose numerous material facts to the Plaintiffs;

g.      Using information obtained from the Plaintiffs in confidence and trust

to his advantage and to the substantial disadvantage of the Plaintiffs; and

h.      Acting in his own best interests, and not only failing to act in the best

interest of the Plaintiffs, but acting directly against and in opposition to their interests.

128.    As a direct and proximate result of Parlin's breaches of contract, the Plaintiffs

have incurred and continue to incur suffer substantial actual, incidental, and consequential

damages, for which Parlin is liable.

## Count VI
## Tortious Breach of Contract
## (Proxy Vote)

129.    The allegations set forth in the foregoing paragraphs are incorporated herein

as if reproduced in full.

130.    Parlin breached the contracts with the Plaintiffs in the ways set forth above.

131.    Parlin's breaches of contract resulted from intentional wrongs, deceit, and

abuse, as well as from such gross negligence as constitutes an independent tort.

132.    As a direct and proximate result of Parlin's tortious breaches of contract, the

Plaintiffs have incurred and continue to incur substantial actual, incidental, and consequential

damages.

133.    Because of the willful, wanton, deceitful, and egregious nature of Parlin's

breaches of contract, Parlin should be assessed with punitive damages.

## Count VII
## Breach of Contract

134.    The allegations set forth in the foregoing paragraphs are incorporated herein

as if reproduced in full.

135.   The contract between Alexandra and Parlin obligated Parlin to, among other things, perform administrative tasks for Alexandra and its downstream entities, hold the stock in M Street in trust for the benefit of Alexandra, and act in Alexandra's best interests in the performance of his duties.

136.   Parlin breached his contract with Alexandra by wholly failing and refusing to perform his duties as set forth above, including but not limited to Parlin's breach of his duties of loyalty and trust owed to Alexandra, failing to disclose numerous material facts to Alexandra, using information obtained from Alexandra in confidence and trust to his advantage and to the substantial disadvantage of Alexandra, and acting in his own best interests, and not only failing to act in the best interest of Alexandra, but acting directly against and in opposition to Alexandra's interests.

137.   As a direct and proximate result of Parlin's breaches of contract, Alexandra has incurred and continues to incur suffer substantial actual, incidental, and consequential damages.

## Count VIII
## Tortious Breach of Contract

138.   The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

139.   Parlin breached the contract with Alexandra in the ways set forth above. Furthermore, Parlin has breached his contract by converting M Street Stock held in trust for Alexandra to his and/or Defendant Weiss's personal use and control.

140.     Parlin's breaches of contract resulted from intentional wrongs, deceit, and abuse, as well as from such gross negligence as constitutes an independent tort.

141.     As a direct and proximate result of Parlin's tortious breaches of contract, Alexandra incurred and continues to incur substantial actual, incidental, and consequential damages.

142.     Because of the willful, wanton, deceitful, and egregious nature of Parlin's breaches of contract, Parlin should be assessed with punitive damages.

## Count IX
## Breach of Implied Duty of Good Faith and Fair Dealing

143.     The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

144.     Defendants Parlin, Weiss, Don Bailey, and Lewis breached their respective contracts, duties and agreements with the Plaintiffs in the ways set forth, and in addition they tortiously breached the contracts, duties and agreements with the Plaintiffs as set forth above.

145.     All contracts in Mississippi, including the respective contracts and agreements between Defendants Parlin, Weiss, Don Bailey, and Lewis and the Plaintiffs, contain an implied duty of good faith and fair dealing.

146.     As purported shareholders in a closely-held corporation, Parlin, Don Bailey and Lewis owed the Plaintiffs a heighted duty to act utmost good faith in their dealings with the Plaintiffs.

147.     As purported majority shareholders in a closely-held corporation, Parlin, Don Bailey and Lewis owed the Plaintiffs, purported minority shareholders, a heightened duty to

act utmost good faith in their dealings with the Plaintiffs.

148.    The conduct of Defendants Parlin, Weiss, Don Bailey, and Lewis as set forth above violated all standards of decency, fairness and reasonableness.

149.    Defendants Parlin, Weiss, Don Bailey, and Lewis  committed numerous wrongful acts against the Plaintiffs, which were intentional, deliberate, wanton, egregious, and malicious, and which they committed based upon a deceitful and dishonest purpose.

150.    Defendants Parlin, Weiss, Don Bailey, and Lewis repeatedly and intentionally failed to act with faithfulness to an agreed common purpose with the Plaintiffs which was consistent with the Plaintiffs' reasonably justified expectations.

151.    Defendants Parlin, Weiss, Don Bailey, and Lewis have intentionally and maliciously oppressed and squeezed out the Plaintiffs from M Street.

152.    The breaches of their duty of good faith and fair dealing by Defendants Parlin, Weiss, Don Bailey, and Lewis  amounts to and constitutes an independent tort.

153.    As a direct and proximate result of the intentional and malicious breaches of their duty of good faith and fair dealing by Defendants Parlin, Weiss, Don Bailey, and Lewis, the Plaintiffs have incurred and continue to incur suffer substantial actual, incidental, and consequential damages.

154.    Because of the willful, wanton, deceitful, and egregious nature of the breaches of the duty of good faith and fair dealing by Defendants Parlin, Weiss, Don Bailey, and Lewis, Defendants Parlin, Weiss, Bailey, and Lewis should be assessed with punitive damages.

## **Count X**

## **Fraudulent Misrepresentation**

155.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

156.    Parlin made numerous representations of fact to the Plaintiffs that were false, including but not limited to the representations set out above.

157.    Among other misrepresentations, Parlin represented that he was authorized to elect himself as the sole director and officer of M Street by virtue of documents that he fraudulently altered for such purpose.

158.    Don Bailey made numerous representations of fact to the Plaintiffs that were false.  Among others, Don Bailey orchestrated and acted in concert with other Defendants to hold a sham corporate meeting for the purpose of solidifying Parlin's fraudulent usurpation of NIT Management stock ownership, and Parlin's consequent alleged right to vote NIT's 25% shares in M Street.

159.    Sandra Bailey acted in concert with Bailey, Parlin and Lewis in the capacities set forth in the paragraph above, and by drafting fraudulent corporate documents to memorialize and effectuate the Defendants' fraudulent purposes.

160.    Each of the representations set out immediately above was material and false, and Defendants Parlin, Don Bailey and Sandra Bailey knew when they made them that they were false.

161.    Defendants Parlin, Don Bailey and Sandra Bailey intended that the Plaintiffs should and would act in reliance on the misrepresentations in the manner they intended and contemplated.

162.    The Plaintiffs did not know that the representations set out above were false, and Defendants Parlin, Don Bailey and Sandra Bailey knew that the Plaintiffs lacked knowledge of their falsity.

163.    The Plaintiffs had a right to rely and did reasonably rely upon the truth of the representations, and they suffered substantial actual, consequential, and incidental damages as a direct and proximate result of their reliance.

164.    Defendants Parlin, Don Bailey and Sandra Bailey should be assessed with punitive damages for their intentional, wanton, and egregious misrepresentations.

### Count XI
### Fraud and Promissory Fraud

165.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

166.    At all relevant times, Parlin acted as an agent for his principal, Alexandra.

167.    As an agent for Alexandra, Parlin owed and owes Alexandra a fiduciary duty, a duty of utmost loyalty, and a duty to act solely for the benefit of Alexandra.

168.    Parlin breached his fiduciary and other duties he owed and owes to Alexandra in the ways set forth herein.

169.    Parlin acted as a proxy-holder, and therefore by law an agent, for the Plaintiffs in voting their respective shares in M Street in connection with the corporation's board of directors election.

170.    As an agent for the Plaintiffs as proxy-holder, Parlin owed and owes the Plaintiffs a fiduciary duty, a duty of utmost loyalty, a duty to act solely for the benefit of the

Plaintiffs, and a duty to follow the instructions of the Plaintiffs in the voting of their shares of M Street stock.

171.    Parlin breached his fiduciary and other duties he owed and owes to the Plaintiffs in the ways set forth herein.

172.    Any breach by an agent such as Parlin of his fiduciary duty and duty of good faith to his principal, whereby the principal suffers any disadvantage and the agent reaps any benefit, constitutes fraud.

173.    Parlin's breach of his fiduciary and other duties to the Plaintiffs has caused them to suffer disadvantage, damages and injury, and Parlin has reaped substantial benefits from his wrongful conduct.

174.    Parlin's conduct as alleged herein therefore constitutes fraud.

175.    Parlin made promises to the Plaintiffs that he had the present, undisclosed intent not to perform, including but not limited to the following:

   a.  In November 2007, on Sterritt's instructions, Parlin formed NIT, and promised Alexandra that he would issue the stock of NIT to Alexandra;

   b.  In April 2012, Parlin promised Alexandra that NIT would hold 25% of the stock in M Street in trust for the benefit of Alexandra;

   c.  In June 2012, Parlin promised the Plaintiffs that he would follow their express instructions to vote for specifically identified persons as officers and directors of M Street.

176.    Each of the statements set out immediately above were intended as accepted by the Plaintiffs, as representations of fact, and involved matters peculiarly within Parlin's

knowledge.

177.    At all times relevant, Parlin was obligated to act as a fiduciary toward the Plaintiffs, and which specifically invested Parlin duties of undivided loyalty and confidentiality towards the Plaintiffs.

178.    Parlin was in a position of trust and confidence justifiably reposed with the Plaintiffs. Based on Parlin's dominating and overpowering position over the Plaintiffs, Parlin owed a fiduciary duty to the Plaintiffs.

179.    Based on their relationship, the Plaintiffs placed peculiar reliance in the trustworthiness of Parlin.

180.    The Plaintiffs did not know that Parlin had no intention of keeping the promises he made.

181.    The Plaintiffs had a right to rely and did reasonably rely upon Parlin's promises and his honest intention to keep them, and they suffered substantial actual, consequential, and incidental damages as a direct and proximate result.

182.    Parlin should be assessed with punitive damages because of the intentional, wanton, egregious, and deceitful nature of his promissory fraud.

## Count XII
## Negligence

183.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

184.    At all times relevant, Defendants Parlin, Weiss, Don Bailey and Lewis were the directors, officers or managers of M Street and Great Southern, and as such had the duties

to be loyal to and honest with them, and not to intentionally prejudice or harm them or their interests.

185.    Defendants Parlin, Weiss, Don Bailey and Lewis had a duty to exercise the skill and knowledge ordinarily possessed by directors and officers under similar circumstances in the performance of their duties for the Plaintiffs.

186.    Defendants Parlin, Weiss, Don Bailey and Lewis negligently breached their duties to the Plaintiffs.

187.    Defendants Parlin, Weiss, Don Bailey and Lewis are liable for these breaches of their duties.

188.    As a direct and proximate result of the breaches by Defendants Parlin, Weiss, Don Bailey and Lewis, the Plaintiffs suffered and continue to suffer substantial actual, incidental, and consequential damages.

## Count XIII
## Gross Negligence

189.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

190.    At all times relevant, Defendants Parlin, Weiss, Don Bailey and Lewis were the officers and directors of M Street and Great Southern, and as such had the duties to be loyal to and honest with them, and not to intentionally prejudice or harm them or their interests.

191.    Defendants Parlin, Weiss, Don Bailey and Lewis had a duty to exercise the skill and knowledge ordinarily possessed by officers and directors under similar

circumstances in the performance of their duties for the Plaintiffs.

192.    In the alternative, Defendants Parlin, Weiss, Don Bailey and Lewis breached their duties to the Plaintiffs by acting with gross negligence in at least the following ways:

a.    Altering corporate voting instructions;

b.    Exhibiting gross negligence in the call and conduct of one or more corporate meetings with an improperly constituted slate of officers and directors of Defendant M Street.

193.    Defendants Parlin, Weiss, Don Bailey and Lewis are liable for these grossly negligent breaches of their duties.

194.    As a direct and proximate result of the gross negligence of Defendants Defendants Parlin, Weiss, Don Bailey and Lewis, the Plaintiffs suffered and continue to suffer substantial actual, incidental, and consequential damages.

195.    The actions of Defendants Parlin, Weiss, Don Bailey and Lewis as set out above were grossly negligent, and undertaken with a reckless and callous disregard for the rights of the Plaintiffs, and therefore, the Defendants should be assessed with punitive damages.

## Count XIV
### Civil Conspiracy

196.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

197.    Defendants Parlin, Weiss, Don Bailey and Lewis entered into one or more agreements to accomplish an unlawful purpose, or a lawful purpose through unlawful means.

198.    Defendants Parlin, Weiss, Don Bailey and Lewis took overt steps and acted

in furtherance of the conspiracy by engaging in unlawful and fraudulent conduct described herein, specifically, but not limited to: voting as a fraudulently constituted board of directors to issue additional stock in M Street; voting as a fraudulently constituted board of directors to buttress the fraudulent position of Parlin as a lawful director and officer of M Street; voting as a fraudulent constituted board of directors to sell the Hotel to Vicksburg Hotels, LLC, pursuant to commercially unreasonable terms; converting $637,000.00 in insurance proceeds to their own personal purposes; and other acts to be adduced at a trial hereof.

199.    As a direct and proximate result of the conspiracy entered into and carried out by Defendants Parlin, Weiss, Don Bailey and Lewis, the Plaintiffs suffered and continue to suffer substantial actual, consequential, and incidental damages.

200.    The Plaintiffs are entitled to punitive damages for the intentional, wanton, and egregious nature of conspiracy of Defendants Parlin, Weiss, Don Bailey and Lewis.

### Count XV
### Securities Fraud

201.    The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

202.    On August 14, 2013, Defendants Parlin, Don Bailey and Lewis informed Avondale that an additional 134,000 shares of stock in M Street would be issued only nine (9) days later, on August 23, 2013, and that Avondale had only those nine (9) days in which to decide whether it would purchase the additional shares of M Street stock.

203.    Defendants Parlin, Don Bailey and Lewis offered to sell M Street stock to Avondale at $1.00 per share. Avondale was offered 40,000 shares of stock, which, if

purchased, would allow Avondale to maintain a 30% ownership interest in M Street. Defendants Parlin, Don Bailey and Lewis would be able to purchase the number of shares sufficient to maintain their purported respective percentage of ownership in M Street.  Id.

204.    Defendants Parlin, Don Bailey and Lewis made use of the means or instrumentalities of interstate commerce and of the mails, in connection with their "offer" to sell the M Street stock.

205.    Despite the fact that Defendants Parlin, Don Bailey and Lewis knew and fully understood that Alexandra was the beneficial owner and shareholder of 100% of the M Street stock, Defendants Parlin, Don Bailey and Lewis failed and refused to offer Alexandra the right to purchase additional shares.

206.    The price per share of the stock was grossly undervalued.

207.    On August 20, 2013, Avondale and Alexandra, through counsel, wrote to M Street requesting that the issuance of additional shares of its stock be halted.

208.    On August 20, 2013, M Street president Bailey responded to the Plaintiffs' letter and offered to delay the issuance of the additional stock by only one business day, until August 26, 2013.

209.    In his letter, Bailey represented that the purpose of the stock issuance was to raise funds needed to pay expenses that M Street and Great Southern had recently incurred. Bailey represented that neither M Street nor Great Southern had the funds necessary to meet those financial obligations.

210.    Bailey's representations were false and material, and were made in connection with the offer or sale of M Street stock, a "security." *See* 15 U.S.C. § 77b(1).

211.    At the time he made the representation, Bailey knew it was false.

212.    The actual, undisclosed purpose of the additional stock issuance was to "squeeze out" the purported "minority" shareholders, Avondale and Alexandra, and to dilute their proportionate ownership interests in M Street and Great Southern in anticipation of a substantial recovery of insurance proceeds.

213.    The Defendants failed and refused to demonstrate any valid business justification for the issuance of additional shares of M Street stock.

214.    In fact, the Plaintiffs have learned that the Defendants had, by the end of February 2013, received over $600,000.00 from Zurich Insurance Company in connection with damage caused to the Hotel by Hurricane Isaac in August 2012.

215.    Bailey's omission of this material fact was intentional and intended to deceive the Plaintiffs.

216.    On January 22, 2013, M Street counsel John Moore emailed Sterritt a "Stock Transfer Agreement" ("STA") on behalf of Parlin.

217.    The email dated January 22, 2013, from Moore and Parlin to Sterritt (attaching the STA) constitutes communication in interstate commerce by the use of the mails.

218.    The STA referred to Alexandra Trust as the "Trust", and expressly acknowledged, "WHEREAS, NIT currently holds 9,900,000 outstanding and issued shares of common stock in M Street in trust for the benefit of the Trust or the designee of the Trust."

219.    In the STA, Parlin demanded $500,000.00 to transfer to Alexandra the stock

certificates for the M Street stock which, in the same document, NIT expressly acknowledged it was holding in trust for the benefit of Alexandra.

220.    Parlin's representation that it held "9,900,000 outstanding and issued shares of common stock in M Street" was false.

221.    At the time he made this representation, Parlin knew it was false.

222.    Only three (3) months later, Moore, acting as corporate counsel for M Street, represented in a letter to Ken Bickford:

> [L]et me disabuse you of the impression that there are 10,000,000 shares of [M Street] stock 'issued' to anyone. While it is true that 10,000,000 shares of common stock were authorized, the issued stock remains today just as it was when Avondale was issued its shares. Avondale Shipyards, Inc. owns 40,000 shares of issued stock; Brett Maverick Venture Funds LP owns 30,000 shares of issued stock; NIT Management, Inc. owns 34,000 shares of issued stock; and Ronald K. Lewis owns 30,000 shares of issued stock.

Letter from John Moore to Ken Bickford, April 30, 2013.

223.    Parlin admitted that the only M Street stock held by NIT were those shares which it held in trust for the benefit of Alexandra.

224.    Parlin acknowledged that Alexandra was the rightful shareholder and owner of the M Street stock.

225.    A "beneficial shareholder" is a "shareholder," with all attendant rights of ownership in a corporation's stock.

226.    Alexandra already owned the stock for which Parlin demanded $500,000.00.

227.    At all relevant times, Parlin was acting as an agent for Alexandra, specifically, to perform the very task he admits having the duty to perform:  to hold M Street's stock in trust for the benefit of Alexandra.

228.    Defendants Parlin, Don Bailey and Lewis are sued as primary participants in the wrongful and illegal conduct and scheme alleged herein.  Defendant Sandra Bailey also aided and abetted Defendants Parlin, Don Bailey and Lewis in this scheme.

229.    Defendants Parlin, Don Bailey, Lewis and Sandra Bailey have violated the Securities Act, 28 U.S.C. § 1331, 15 U.S.C. §§ 77b and 77q, and 17 C.F.R. § 240.10b-5, by:

a.       employing devices, schemes, and artifices to defraud;

b.       made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and

c.       engaged in acts, practices, and a course of business which operated as a fraud and deceit on the Plaintiffs in the offer of securities, in an effort to enrich themselves through undisclosed tactics and wrongfully appropriated assets.

230.    Defendants Parlin, Don Bailey, Lewis and Sandra Bailey have, directly or indirectly, made use of the means or instrumentalities of interstate commerce and of the mails in connection with the transactions, acts, practices and courses of business alleged herein.

231.    Defendants Parlin, Don Bailey, Lewis and Sandra Bailey are liable for their violations of the Securities Act as alleged herein.

## Count XVI
## (Civil RICO)

232.    The allegations contained in the foregoing are incorporated herein as if reproduced in full.

233.    Defendants used the mails, telephone, telephone facsimile, and other interstate

modes of transportation to commit fraud and to engage in a conspiracy as described above.

234.    Defendants intentionally participated in a scheme to defraud Plaintiffs of money or property and used the mails or wires in furtherance of that scheme. Defendants are therefore guilty of violating federal mail fraud and wire fraud statutes, pursuant to 18 U.S.C.A. § 1341 and 18 U.S.C.A. § 1343.

235.    The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1961 et seq., makes it a crime "to conduct" an "enterprise's affairs through a pattern of racketeering activity." 18 U.S.C.A. § 1962(c).

236.    The phrase "racketeering activity" is defined as an activity that violates other laws, including more than 50 federal statutes that are specifically referred to in the RICO statutory provisions.  Mail and wire fraud are among the statutes that are specifically referred to in RICO.

237.    The term "pattern" in the RICO statutory provisions is defined to require "at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity."

238.    The course of conduct in which the Defendants engaged as set forth above violates RICO.  The Defendants intentionally participated in a scheme to defraud Plaintiffs of money or property during the period of 2011 to 2013, and continuing, and used the mails or wires in furtherance of that scheme on at least two occasions during that period.

239.    As discussed in detail above, Plaintiffs were directly injured in their business and property by reason of Defendants' violation of the RICO provisions.

240.     Accordingly, under the Civil RICO provisions set forth in 18 U.S.C.A. § 1964(c), Plaintiffs are entitled to recover from the Defendants treble the damages they incurred, plus their costs and attorney's fees.

**Count XVII**
**Breach of Fiduciary Duty**
**Derivatively**

241.     The allegations set forth in the foregoing paragraphs are incorporated herein as if reproduced in full.

242.     The Plaintiffs assert Count XIV derivatively against Parlin, Lewis, Weiss and Don Bailey on behalf of M Street, Great Southern and NIT.

243.     The Plaintiffs were and are owners and shareholders of M Street and Great Southern at the time of the transactions and events complained of in this action.

244.     Alexandra was and is the beneficial owner and shareholder of NIT at the time of the transactions and events complained of in this action.

245.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

246.     Pursuant to Miss. Code Ann. § 79-4-7.42, on August 20 and 23, 2013, the Plaintiffs, through counsel, sought to obtain action from the Board of Directors by letters to the purported President of M Street, Donald Bailey.

247.     Ninety days have expired from the date of delivery of the Plaintiffs' demands. The Boards of Directors of M Street and Great Southern have rejected those demands. See Miss. Code Ann. § 79-4-7.42.

248.     The reason the Boards of Directors of M Street and Great Southern rejected

the Plaintiffs' demands is that Defendants Parlin, Bailey and Lewis, the purported directors and officers of M Street, Great Southern and NIT, fraudulently benefited by their wrongful and unlawful acts, as described herein.

249.    The Plaintiffs fairly and adequately represent the interests of M Street and Great Southern in enforcing the rights of those corporations.

250.    Alexandra fairly and adequately represents the interests of NIT in enforcing the rights of NIT.

251.    The Plaintiff have complied with the prerequisites of filing a derivative action pursuant to Mississippi law.  In the alternative, because M Street, Great Southern and NIT are closely-held corporations, should the Court find that the Plaintiffs have not complied with the pre-filing prerequisites ordinarily imposed upon shareholders in bringing derivative actions, the Plaintiffs respectfully request that the Court exercise its discretionary authority to treat this action raising derivative claims as a direct action, exempt them from those restrictions and defenses applicable only to derivative actions, and order an individual recovery.  See *Derouen v. Murray*, 604 So. 2d 1086, 1093 n.2 (Miss. 1992); *Investor Resource Services, Inc. v. Cato*, 15 So. 3d 412, 422 (Miss. 2009).

252.    In so doing, this action will not unfairly expose the corporations or the Defendants to a multiplicity of actions, materially prejudice the interests of creditors of the corporations, or interfere with a fair distribution of the recovery among all interested persons. Id.

253.    As purported officers and directors of M Street and Great Southern, Defendants Parlin, Lewis and Don Bailey owed and owe a fiduciary duty to M Street and

Great Southern.

254.    The duties owed by Defendants Parlin, Lewis and Don Bailey to M Street and Great Southern required them to exercise the utmost good faith, honesty, allegiance, and undivided loyalty to M Street and Great Southern.

255.    Defendants Parlin, Lewis and Don Bailey have breached their fiduciary and other duties to M Street and Great Southern as described herein.

256.    As purported officers and/or directors of NIT, Parlin and Weiss owed and owes a fiduciary duty to NIT.

257.    The duty of Parlin and Weiss to NIT required them to exercise the utmost good faith, honesty, allegiance, and undivided loyalty to NIT.

258.    Parlin and Weiss have breached their fiduciary and other duties to NIT as described herein.

259.    Don Bailey, Sandra Bailey and Lewis conspired with, and aided and abetted Parlin and Weiss in the breach of their fiduciary duties to NIT.

260.    Defendants Parlin, Lewis and Don Bailey intentionally breached their fiduciary and other duties to M Street and Great Southern by engaging in at least the following conduct:

        a.      Converting for their own use insurance proceeds that rightfully belong to M Street and Great Southern;

        b.      Paying themselves excessive salaries and conferring upon themselves other material benefits at the expense of M Street and Great Southern;

        c.      Acting in a negligent and/or grossly negligent manner in the

management of M Street and Great Southern;

        d.     Approving the sale of the hotel (the corporations' sole real property asset) for commercially unreasonable consideration;

        e.     Acting for improper and unlawful purposes in voting to issue additional shares of M Street stock, for a grossly undervalued price per share;

        f.     Acting in their own best interests, and not only failing to act in the best interests of M Street and Great Southern, but by acting directly against and in opposition to the corporations' interests; and

        g.     Aiding and abetting Parlin in his unlawful and wrongful conduct;

        h.     Purporting to act as the duly-constituted officers and boards of directors of M Street and Great Southern, when they knew that the boards of directors were fraudulently constituted; and

        i.     As to Parlin, fraudulently and unlawfully altering the minutes of one or more meetings of the board of directors of M Street.

    261.    Parlin and Weiss intentionally breached their fiduciary and other duties to NIT by engaging in at least the following conduct:

        a.     Converting for their own use insurance proceeds and other assets and property that rightfully belong to NIT;

        b.     Paying Parlin and/or Weiss an excessive salary and conferring upon themselves other material benefits at the expense of NIT;

        c.     Acting in a negligent and/or grossly negligent manner in the management of NIT;

d.      Acting in their own best interests, and not only failing to act in the best interests of NIT, but by acting directly against and in opposition to NIT's interests; and

e.      Improperly and unlawfully seizing ownership, management and control of NIT;

f.      Using NIT's assets, including but not limited to the stock in M Street, for their own purposes;

g.      Don Bailey, Sandra Bailey and Lewis conspired with, and aided and abetted Parlin in the breach of his fiduciary duties to NIT.

262.    As a direct and proximate result of the breaches by Defendants Parlin, Lewis, Weiss and Don Bailey of their fiduciary and other duties, M Street, Great Southern and NIT have incurred and continue to incur substantial actual, incidental, and consequential damages.

263.    Because of the willful, wanton, and egregious nature of the breaches by Defendants Parlin, Lewis, Weiss and Don Bailey of their fiduciary and other duties to M Street, Great Southern and NIT, Defendants Parlin, Lewis, Weiss and Don Bailey should be assessed with punitive damages.

## DAMAGES

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand a trial by jury and respectfully request that this Court grant them the following relief and damages:

A.      Compensatory, consequential, and incidental damages in an amount to be proven at the trial of this cause;

B.      Punitive damages assessed against the Defendants in an amount to be

determined at trial;

C.     An accounting of all records, ledgers, and other financial documents from which it may be determined the amount of funds, property and profits the Defendants unlawfully obtained as a result of their conduct as alleged herein.  Discovery of all relevant information and documents relating to the subject corporations and the actions taken by Defendants in relation thereto;

D.     All costs, expenses and attorneys' fees incurred by the Plaintiffs as a result of bringing this action;

E.     A Temporary Restraining Order and Preliminary Injunction to enjoin the Defendants from continuing to commit the unlawful actions complained of herein; and

F.     Other such damages and/or relief which the Court deems appropriate.

And Plaintiff prays for general relief.

This the 9th day of January, 2014.

Respectfully submitted,

HOLADAY LAW FIRM, PLLC

_John G. Holaday_                    with permission _Kristi M [illegible]_

OF COUNSEL:

John G. Holaday, MS BAR#9814
HOLADAY LAW FIRM, PLLC
P.O. Box 321406
Flowood, Mississippi 39232
Telephone: 601.414.3574
Facsimile:  601.992.7727
*Attorney for AGT Capital, LLC*

Page 60 of  60